AUGUST TERM
1839.

Warberton &
King,
vs,
A. Wood et al.

**WARBERTON & KING** *vs* A WOODS et al.

1. The 52d sect. of the act of the General Assembly "to regulate executions," (R C. 1835, p. 260,) renders sheriffs liable as well for negligent, as for voluntary escapes. The word "permit," in the sect. includes escapes both negligent and voluntary.

Opinion of the court delivered by McGirk Judge.*

"In the early part of the year 1834, Warberton & King obtained a Judgment in the circuit court of Boon county against one Brewster for about the sum of five hundred dollars, and the same remaining unpaid, the plaintiffs in July 1837, by their agent Wm. L. Vaughn, took an execution on the judgment directed to the sheriff of Morgan county, of which county Woods was the sheriff, and Vaughn shortly thereafter went to the sheriff, and put in his hands the execution and went with him to find Brewster, which they did, and the sheriff arrested Brewster, and Brewster escaped from the sheriff. And this action is brought against the sheriff and his securities on the sheriffs bond to recover in debt the amount of the execution. The defendant pleaded *nil debet.* On this plea the parties went to trial before a jury. It appears, by the testimony of Mr. Vaughn, that in July 1837, he took the execution against Brewster and delivered it to Woods the defendant, who was then sheriff of Morgan county, and that the defendant and himself started there to hunt for Brewster. That on their road to hunt Brewster, Vaughn requested the sheriff to keep the matter a secret, for that if Brewster should know they were after him he would certainly escape. That they found Brewster at the mouth of the creek Gravois, where it empties into the Osage river on the west bank of the same in a rail pen grocery. That the sheriff asked Brewster for various kinds of property of which Brewster replied that he had none, that the sheriff then gently clapped Brewster on the shoulder, and said to Brewster, you are my prisoner; that in a few minutes Brewster turned to Vaughn, and asked him if he was agent for Warberton & King, to which he replied he was. Brewster then said to Vaughn, he wished to speak to him. They then

*NOTE.—Jupge Napton, having, been of counsel, did not sit th cause.

both arose, and Brewster walked off, and Vaughn followed,
that they walked rather under a hill some twenty or thirty yards, and as witness believes out of sight of the sheriff, that while there, Brewster made some vague propositions which the witness as agent could not accept. That they were absent near fifteen minutes, and then they returned and found the sheriff still at the rail pen. That Vaughn wished to cross the Gravois to see Miningport, and the sheriff wished to cross also to collect a merchants licence tax, that they all started to go over. Brewster got in the canoe first, sheriff Woods next, Vaughn last, that the river was tolerably high. Brewster paddled the canoe over, Vaughn got out first when they reached the opposite shore Woods next, and that they two walked thirty or forty yards, and that Vaughn hearing a noise back at the canoe turned round, and saw Brewster pushing the canoe out in the stream. Then Vaughn said to Woods, 'see there, Woods.' Woods advanced towards Brewster and said 'do you mean to serve me so:' that then Woods ran down the stream a piece, but could do nothing. Brewster kept out in the stream and escaped, Mr. Woods also summoned persons on the opposite side to take Brewster but they could not.

Vaughn says, Woods asked him for instruction before the arrest, to which he replied he had none to give, and that they could be found in the statutes. The defendant introduced one Hix as a witness who substantially swore the same as Vaughn except that witness says he proposed to take the canoe and take Vaughn and Woods over, and Brewster being present said he had to go over also, and that he would paddle the canoe over, to which it seems neither Vaughn nor Woods made any objection or reply. The foregoing is substantially all the evidence in the cause.

The plaintiff then asked the court to give the jury several instructions, the first of which was, that if they found that Vaughn was present at tne arrest and at the escape, and that unless they find that Vaughn expressly consented to the same, then they must find for the plaintiff, which the the court refused, but struck out the word *expressly* and then gave the instruction. This alteration of the instruc-

AUGUST TERM
1839.
Warberton &
King,
vs,
A Wood et al.

tion asked is complained of as being erroneous. This court is of opinion that the circuit court was right in striking out the word *expressly,* because if the agent consented to the escape, this consent may be implied as well as expressed and if the fact existed and was satisfactorily proven, then the consequence would be the same as if the consent had been expressed. There is no error in this point. The court refused to give the 3rd instruction asked by the plaintiff which was, that if the jury believed from the evidence that Brewster, after being taken in execution in the presence of the sheriff, asked Vaughn to walk aside, and that they did do so, and the sheriff made no objection thereto that is evidence of a voluntary escape suffered by the sheriff. I am not exactly prepared to say that the court should have given this instruction, because I am not prepared to pronounce the going under the hill of the prisoner any escape at all. When we look at the condition of all the parties, it is difficult to say what degree of contiguity should have constantly existed between the sheriff and the prisoner to have continued the arrest. It surely cannot be supposed that the sheriff should have, to continue the arrest, kept his hand constantly on the shoulder of the prisoner. If the sheriff kept the prisoner under his power to a common *intent* while thus in the woods, it was enough. In my opinion he did this. I therefore think that this departure down the hill side was no escape at all. In this view of the subject the instruction was rightly refused.

The 4th instruction asked and refused is also founded on the notion that the walk down the hill was an escape, and as the facts do not amount in law to an escape—there is no error in refusing that also.

The 5th instruction asked by the plaintiff was given.

The 6th instruction asked and refused was. That if the jury believed Vaughn acted under a general authority from plaintiffs, this did not authorize him to consent to an escape. I will say but little on this point, as the only escape I can discover in the case was that which took place on crossing the creek, and I see no evidence of any kind to suppose Vaughn consented to that.

The 7th and 8th instructions are about the same, they ask AUGUST TERM 1839. the court to say there was evidence, in the case, of a negligent escape which the court refused. Warberton and King, vs, A Wood et al

The 9th instruction asks the court to say there was no evidence in the cause that Warberton & King had given Vaughn any authority to consent to the escape, all these the court refused. The court might, without unjust injury to to the defendants right, have given the 9th instruction, as I cannot see any testimony that the plaintiffs gave any such authority unless such authority arises as matter of law out of the general authority. If it does not arise then; if then the question had been fairly put on that point no doubt the court would have responded as the matter stands, I cannot see how the plaintiffs were injured by the refusal. As to the 7th and 8th instructions refused, there is error in refusing them but I will take together the whole matter arising out of this refusal and also the matter arising out of the instructions given for the defendant the first position assumed by the court in the first instruction given for the defendant is that if the prisoner escaped without the consent of the sheriff, then the sheriff is not liable. The 2nd instruction regards the going of Brewster under the hill. As this was no escape I will pay no farther attention to it. Then in the 4th place the court instructed the jury, there were two kinds of escapes in law one voluntary and the other negligent, and that the act of assembly only made sheriffs liable for voluntary escapes. There can scarcely be a doubt that Brewsters escape from the canoe was a negligent escape in the sheriff The sheriff whose duty it was to take care and keep the prisoner left him free to act as he pleased and he soon put himself in a position beyond the sheriffs power and control. This was negligence in the sheriff and might have been easily prevented. The escape was therefore negligent in the highest degree. The court refused to instruct the jury, that there was evidence of a negligent escape. If the statute only makes a sheriff liable for a voluntary escape then the court did right to refuse these instructions, and did right in giving those given. This brings us to the consideration of the statute on which the action is founded. By the 52. Sec. of the act re-

AUGUST TERM 1839.

Warberton & King, vs, A Wood et al.

specting executions, Revised code 260 it is enacted that "if any officer, to whom any execution shall be delivered, shall refuse or neglect to execute the same according to law, or after having taken the defendants body in in execution shall permit him to escape, then and in such cases aforesaid such officer shall be liable and bound to pay the whole amount of money in such writ specified or endorsed thereon."

The question raised on this section is what is the legal meaning of the word permit. The rule given by Blackstone for for the interpretation of law is this that where words are not technical they are to be understood according to their ordinary common English meaning. Permit is not a technical word and in English it has two or three significations, the first is where the mind consents to the act; the second is where the mind does not affirmatively agree to the act but has the right and the means to interfere to prevent the same from transpiring, but for want of care or from laziness or neglect the person makes no move to prevent the act from taking place, according to this meaning of the word where the officer consents to the escape, he has permitted it and is within the statute, and that when he has means to prevent it, and does not avail himself of those means with proper vigilance and in a proper manner he has also permitted the escape, and is also within the statute.

The 52 sect. of the act of the General Asembly "to regulate executions," (R. C. 1835, p. 260,) renders sheriffs liable as well for negligent, as for voluntary escapes the word "permit," in the sect. includes escapes both negligent and voluntary.

In this case the sheriff acted most imprudently to put all in the prisoners power and that too after he had been secretly admonished by Vaughn that there was danger.—As to the question whether this construction is not severe, my opinion is that the law requires all sheriffs to be vigilant in keeping prisoners. Such is the language of nearly all the books on this point. In this case the sheriff was passive in doing his duty by which passiveness the prisoner escaped him. I conclude he permitted the escape and therefore he is liable on the statute. The 7th and 8th instructions should have been given and those given for the defendant should have been withholden. The judgment of the circuit court is reversed and remanded for a new trial."

Hayden for Plaintiff.

"The plaintiffs will insist in this court upon the following points.

1. That the sheriff Woods was liable in this action if guilty either of a voluntary or negligent escape, and to sustain it will read the following authorities, see digest 1834–5, 260, 52, 53. see section. 3d 579, 580, title sheriffs; and, also 13 J. 255 page, 2, R. 131–2 Bonafous vs Walker. 2 Wm. Blackstone 1048, 9 John R. 140, same book 329, Bac 513, 1 Saund R. 35 note (1.) 3 Mass R. 101–2, 11 Mass. R. 14 Brown vs Getchell et al Mass R. 377.

2. That the sheriff is liable unless the plaintiffs or their agents expressly assented to the escape, and that in this case there is no evidence of such assent, either express or implied, 10 John R. 220–1, see 8 John 347. Jackson vs Douglas. 367 1 Pickering R. 347 see Crany & Morgan. vs Turner 6 John 51, 52 3, 10 vol. John R. 59.

3. That the circuit court erred in refusing to give the instructions asked for by pltffs. and in giving those which were given for defts."

Miller & Wilson for deft.

"The counsel for defendant will insist upon the following points.

1. That the court very properly refused the instructions asked by plaintiff.

2. That the court did not err in giving the instructions asked by defendant.

3. That if the plaintiffs agent Vaughn consented to walk out of the presence and sight of the sheriff, and did so, it was an escape, for which the sheriff is not liable.

4. That the statute, under which this suit was brought, only extends to cases of voluntary escapes. Holmes vs. Lansing 3 John cases 73.

5. That if the sheriff permitted Brewster to escape with the consent of plaintiff's agent, that it is a voluntary escape for which defendants are not liable and that he is not liable for any subsequent escape. 4 Johnson Repts 45, 15 Johnson 256, 1 Bibb 194."